## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PRS INSURANCE GROUP, INC., et al., | : | Case No. 00-4070 (MFW) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| SEAN C. LOGAN, in his capacity as Chapter 11 Trustee of PRS INSURANCE GROUP, INC., et al., | : | Adv. Pro. No. 05-50819 |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CREDIT GENERAL INSURANCE COMPANY and CREDIT GENERAL INDEMNITY COMPANY, | : | **Related Docket Nos. 21, 22** |
| | : | |
| Defendants. | : | |

## MOTION FOR LEAVE TO APPEAL ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS

Ann H. Womer Benjamin, Superintendent of the Ohio Department of Insurance, in her capacity as Liquidator (the "Liquidator") of Defendants Credit General Insurance Company and Credit General Indemnity Company, (hereinafter collectively "CGIC"), by and through counsel, hereby respectfully files this Motion for Leave to Appeal Order Denying Defendants' Motion to Dismiss (the "Motion"), pursuant to 28 U.S.C. § 158 and Rules 8001 and 8003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). (A copy of the Bankruptcy Court's Order denying the Liquidator's motion to dismiss (D.I. No. 22) is attached as Exhibit "A", along with the Court's attendant Memorandum Opinion (D.I. No. 21)). In support of her Motion, the Liquidator respectfully states as follows:

## PRELIMINARY STATEMENT

1.     With the instant adversary proceeding, Plaintiff, Sean C. Logan, Chapter 11 Trustee (the "Trustee") for PRS Insurance Group, Inc. ("PIGI") and various PIGI subsidiaries (collectively the "PRS Group"), seeks to establish the predicate facts for the equitable subordination, pursuant to Bankruptcy Code § 510(c), of the proof of claim filed by CGIC in these bankruptcy proceedings.[1]   The predicate determination the Trustee seeks with this adversary proceeding is that CGIC acted inequitably with regard to certain transactions or transfers of assets between members of the PRS Group and CGIC pre-bankruptcy.  Specifically, the Trustee alleges that CGIC's conduct in connection with the transfers "constituted fraud, illegality and a breach of CGIC's and [the Ohio Department of Insurance's] fiduciary obligations to the PRS Group." (Amended Complaint, ¶ 52.)

2.     Bankruptcy Code § 510(c) permits the bankruptcy court, on equitable grounds, to "subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim," even if no preferential transfer (under §547 of the Bankruptcy code) or fraudulent conveyance (under §548 of the Bankruptcy code) has occurred.  11 U.S.C. §510(c).

3.     The principles of equitable subordination are not set out in the Bankruptcy code, and are defined by case law.  "Before ordering equitable subordination, most courts have required a showing involving three elements:  (1) the claimant must have engaged in some type of inequitable conduct, (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, and (3) equitable subordination of the claim must

---

[1]   In a related adversary proceeding (Adv. Pro. No. 05-50818), the Trustee seeks to establish the predicate for disallowance of CGIC's proof of claim pursuant to Bankruptcy Code § 502(d).  The Liquidator recently moved for leave to appeal the Bankruptcy Court's denial of her motion to dismiss the adversary proceeding and the Bankruptcy Court's denial of her motion for reconsideration.  The issues raised in the Liquidator's motion for leave in the other adversary proceeding and in this motion are the same.

DEL1 63183-1

not be inconsistent with the provisions of the bankruptcy code." *Citicorp Venture Capital, Ltd. v. Comm of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-987 (3d Cir. 1998).

4.    Because equitable subordination is remedial, not penal, a claim will generally be subordinated only to the extent necessary to offset the specific harm that the debtor and its creditors suffered on account of the alleged inequitable conduct. *Fabricators, Inc. v. Technical Fabricators, In. (In re: Fabricators, Inc.)*, 926 F.2d 1458, 1470 (5th cir. 1991). The Trustee seeks to subordinate CGIC's claim "in its entirety to the claims of all other creditors of the PRS Group." (Amended Complaint, ¶ 56.)

5.    If a federal law that does not specifically relate to the business of insurance directly conflicts with state regulation of the business of insurance and application of the federal law would frustrate any declared state policy **or** interfere with a State's administrative regime for insurance, the McCarran-Ferguson Act, 15 U.S.C. § 1101, *et seq.*, precludes application of the federal law. *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307-310 (1999); *see* 15 U.S.C. § 1012 ("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance").

6.    In denying the Liquidator's motion to dismiss the adversary proceeding, the Bankruptcy Court concluded that it had both personal and subject matter jurisdiction over the adversary proceeding and that the McCarran-Ferguson Act was not implicated because the Trustee was not seeking an affirmative recovery from CGIC.

7.    The equitable subordination defense the Trustee attempts to assert with this new adversary proceeding, however, constitutes the very same fraud, illegality and a breach of alleged fiduciary obligations claims concerning the disputed asset transfers he is affirmatively

3

asserting in the statutory CGIC liquidation proceeding in Ohio, as a result of the proof of claim he filed there. Litigation of the adversary proceeding and any determination by the Bankruptcy Court concerning the conduct of CGIC with regard to the asset transfers in question would impermissibly frustrate Ohio policy and interfere with Ohio's administrative regime regulating insurance company liquidations. Consequently, under McCarran-Ferguson, subject matter jurisdiction over the adversary proceeding is lacking.

8.      The adversary proceeding also is in direct violation of the CGIC liquidation order which enjoins persons from instituting or continuing to prosecute any civil action or claim, including counterclaims, against CGIC. Also, if allowed to proceed, the claims asserted against CGIC in this adversary proceeding would disrupt the orderly and centralized liquidation of CGIC, and thus on alternative grounds the Bankruptcy Court should have abstained from exercising jurisdiction over the Trustee's claims against CGIC or at least stayed the adversary proceeding pending resolution of the Trustee's claims in the CGIC liquidation.

9.      Because the Bankruptcy Court erroneously failed to dismiss or stay the adversary proceeding, the Liquidator is compelled to seek relief by way of this requested interlocutory appeal.

## STATEMENT OF THE FACTS NECESSARY TO AN UNDERSTANDING OF THE QUESTIONS TO BE PRESENTED BY THE APPEAL

### A.      CGIC Supervision and Examination.

10.      Because of concerns about the company's operations, CGIC, an Ohio-domiciled insurance company, was placed into Supervision, pursuant to Ohio Revised Code § 3903.11. CGIC's parent, PIGI, and PIGI's other non-Ohio insurance company subsidiaries agreed to cooperate fully with the appointed Supervisor of CGIC and the Ohio Department of Insurance ("ODI").

4

11      At the same time Supervision began, ODI was engaged in an ongoing, on-site examination of CGIC under Ohio Revised Code § 3901.07.  As a part of its examination of CGIC, ODI was engaged in efforts to determine what statutory surplus, if any, the insurance company held.  Ohio Revised Code § 3929.011 requires Ohio-domiciled insurance companies to maintain a certain minimum amount of surplus (*i.e.*, assets in excess of liabilities) to continue writing insurance.  In response to various questions by ODI, PRS Group and CGIC management reported that assets used to support CGIC's reported surplus were actually held by PIGI or other PIGI subsidiaries.

12.     Once ODI realized that CGIC funds had been commingled with the funds of the PRS Group, ODI requested that CGIC and the PRS Group take remedial action.  ODI's position was that if CGIC assets used to support its surplus were elsewhere in the PRS Group, then management should transfer them back into CGIC.  All insurance company cash, receivables and other assets (as well as liabilities) should be directly held by CGIC, not other companies in the PRS Group.  PRS Group and CGIC management agreed with ODI's position.

13.     PRS Group and CGIC management were cautioned more than once by the Supervisor to move only CGIC related assets back into CGIC.  For instance, the Supervisor circulated a memorandum to management confirming the understanding that it was important that all proprieties be adhered to and that only the cash and other assets which properly belong to CGIC be placed under its control.

14.     Management of the PRS Group and CGIC, in consultation with their in-house and outside lawyers, conducted a series of inter-company transactions and asset transfers during Supervision.  The transactions and transfers returned to CGIC either its own assets or paid some amounts due to CGIC from PRS Group companies.

DEL1 63183-1

**B.     CGIC Rehabilitation and Liquidation.**

15.     Five months after CGIC was placed under Supervision, the Court of Common Pleas, Franklin County Ohio (the "Ohio Court") ordered CGIC into statutory Rehabilitation pursuant to Ohio Revised Code § 3903.12 because CGIC's condition was such that its further transaction of business outside of rehabilitation proceedings would be financially hazardous to its policyholders, creditors, and/or the general public.

16.     An order of rehabilitation allows a troubled insurance company to continue its existence, but the Superintendent is appointed Rehabilitator and given the power to manage the company until the problems are corrected, or until the insurance company is otherwise placed in liquidation.   An insurance company may be released from rehabilitation when the court is satisfied that it is ready to resume normal operations.

17.     Two months after ordering rehabilitation, the Ohio Court determined CGIC to be insolvent and ordered it liquidated in accordance with Ohio's Liquidation Act, Ohio Revised Code Chapter 3903.   The Superintendent of Insurance was appointed Liquidator pursuant to Ohio Revised Code §§ 3903.17 and 3903.18, and vested by operation of law with the title to all rights and assets of CGIC.

18.     In accordance with Ohio's Liquidation Act, the Ohio Court enjoined all persons from (1) instituting or continuing to prosecute any civil action or claim against CGIC or the Liquidator, (2) in any way interfering with the possession, control, title, rights, and interests of the Liquidator as provided by Ohio Revised Code §§ 3903.01 to 3903.99, inclusive, or (3) taking any action which tends to give rise to waste of assets, a preference, judgment, attachment, lien or the making of a levy against CGIC or its property or assets subject to the possession or control of the Liquidator.

19.     Also in accordance with Ohio's Liquidation Act, the Ohio Court set a time period within which any and all claims against CGIC must be filed with the Liquidator on proof of claim forms approved and provided by the Liquidator together with proper proof. The Trustee timely filed a proof of claim in the CGIC liquidation.

20.     Although the Trustee was instructed to file a separate proof of claim for each claim, he only filed one proof of claim form purporting to assert a number of distinct claims on behalf of various companies of the PRS Group. Accordingly, the Liquidator separated the claims and assigned them individual proof of claim sequence numbers. The proof of claim consists of twenty-three distinct claims pertaining to the disputed asset transfers during Supervision, including claims that the transfers are preferences or fraudulent conveyances under the Bankruptcy Code.

21.     The Trustee's claims are being evaluated by the Liquidator in the normal course of the liquidation proceeding and determined in accordance with the process established by Ohio's Liquidation Act. Ohio Revised Code § 3903.39. So far, the Liquidator has issued determination letters denying fourteen of the Trustee's twenty-three distinct claims. The Trustee has objected to eleven of the Liquidator's determinations. The remaining determinations will be forthcoming. As soon as practicable, the claims for which the Trustee has objected to the Liquidator's determinations will be set for hearing and resolution by the Ohio Court.

**C.     PIGI and PIGI Subsidiaries' Bankruptcies.**

22.     Near the end of CGIC's Supervision, an involuntary Chapter 7 petition was filed in the Delaware Bankruptcy Court against PIGI, a Delaware incorporated insurance holding company. A few months later, PIGI agreed to the entry of an order for relief and converted the involuntary Chapter 7 case to a voluntary Chapter 11 case. The Bankruptcy Court thereafter

7

entered an Order approving the election of Sean C. Logan as Chapter 11 Trustee.

23.     The Trustee caused eleven subsidiaries (six domestic subsidiaries and five foreign subsidiaries) of PIGI to file voluntary Chapter 11 bankruptcy petitions with the Delaware Bankruptcy Court.  These cases are being jointly administered with the main PIGI bankruptcy case under the docket number of 00-4070(MFW).  The cases are not substantively consolidated.

24.     The Liquidator timely filed a proof of claim in the PRS bankruptcy, claiming in excess of $45.8 million owed to CGIC by the PRS Group. The Liquidator's claim against the PRS Group is primarily based upon intercompany receivables owing from the PRS Group to CGIC.  The proof of claim specifically and clearly indicates that it was filed merely as a defensive measure in order to avoid any possible waiver of CGIC's right to participate in the distribution of Debtors' estate.  The Liquidator expressly noted the impact of the McCarran-Ferguson Act in the proof of claim.

       **D.     The Trustee's Prior Adversary Proceedings.**

25.     The Trustee filed objections to the Liquidator's proof of claim.  At the same time he filed the objections, the Trustee initiated two adversary proceedings against CGIC (Adversary Proceeding Nos. 03-50408 and 03-50409).   With his complaints in the two adversary proceedings, the Trustee asserted avoidance and turnover actions under §§ 542, 544, 547, and 548 of the Bankruptcy Code with regard to the asset transfers to CGIC during Supervision.  The Trustee also sought to disallow CGIC's proof of claim pursuant to § 502(d) of the Bankruptcy Code.  In addition, the Trustee asserted a claim for equitable subordination of CGIC's proof of claim under Bankruptcy Code § 510(c).

26.     The Liquidator moved to dismiss the Trustee's two adversary proceedings against CGIC on the grounds that the federal statutes creating the bankruptcy causes of action asserted

DEL1 63183-1

by the Trustee, as well as the Bankruptcy Court's exercise of jurisdiction, are reversed preempted by Ohio's Liquidation Act pursuant to the McCarran-Ferguson Act.  After extensive briefing by the parties, the Court granted the Liquidator's motions to dismiss.  In granting the motions to dismiss, the Court concluded that "application of the Bankruptcy Code **in the instant adversary [proceeding]** would frustrate state policy and interfere with a State's [Ohio's] administrative regime regulating insurance" and that "subject matter jurisdiction over **the adversary proceeding**" was lacking.  (Memorandum Opinion at pp, 6 & 7) (emphasis added).

27.    The Trustee subsequently appealed the dismissal of the two adversary proceedings to the District Court (Civil Action No. 04-319 SLR).  The District Court affirmed the dismissal of the two adversary proceedings.

### E.    The Instant Adversary Proceeding.

28.    Earlier this year, the Trustee filed the instant adversary proceeding.  The complaint is largely the same as the prior complaint filed by the Trustee against CGIC (Adversary No. 03-50409).  However, this time, the Trustee attempts to circumvent the reach of the McCarran-Ferguson Act by stating in the complaint that "**[t]he PRS Group is not seeking any affirmative recovery from [CGIC] in this adversary proceeding.**"  (Complaint at p. 2) (Emphasis in original.)  The Trustee asserts that he brought the adversary proceeding against CGIC solely to establish the predicate facts for the equitable subordination of CGIC's proof of claim pursuant to Bankruptcy Code § 510(c).

29.    As she did before, the Liquidator filed a Motion to Dismiss the Trustee's adversary proceeding against CGIC on the grounds that the Bankruptcy Court's exercise of jurisdiction over the adversary proceeding is reversed preempted by Ohio's Liquidation Act pursuant to the McCarran-Ferguson Act.  Alternatively, the Liquidator argued that if the

9

Bankruptcy Court has jurisdiction, it should abstain from hearing the dispute or stay the action pending a determination by the Ohio Court of the underlying facts already at issue in the CGIC liquidation proceeding by virtue of the proof of claim filed there by the Trustee.

30.    This time, the Bankruptcy Court denied the Liquidator's motions to dismiss, concluding that McCarran-Ferguson was not implicated because the Trustee was not seeking affirmative relief from CGIC.  In the Court's December 19, 2005 Memorandum Opinion, the court incorporated September 23 and December 8 opinions rendered in Proceeding No. 05-50818.  According to the Bankruptcy Court, in allowing the adversary proceeding to go forward, it was not "interfering with the jurisdiction of the Ohio State Court, but is merely exercising its exclusive jurisdiction" over the Trustee's preference and fraudulent conveyance claims. (September 23, 2005 Memorandum Opinion at p, 13.)  The Bankruptcy Court also held that because it was exercising its exclusive jurisdiction, neither abstention nor a stay were appropriate.  (September 23, 2005 Memorandum Opinion at pp, 17-18.)

31.    The Liquidator has timely appealed and, now file this motion for leave to appeal under 28 U.S.C. § 158(3)(a).

### **RELIEF REQUESTED**

32.    The Judiciary Code at 28 U.S.C. § 158(a)(3) states in relevant part:

    (a)    The district courts of the United States shall have jurisdiction to hear appeals . . .

        (3)    . . . with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a)(3).

33.    Furthermore, Bankruptcy Rule 8001(b) states in relevant part:

DEL1 63183-1

> An appeal from an interlocutory judgment, order or decree of a
> bankruptcy judge as permitted by 28 U.S.C. § 158(a)(3) shall be
> taken by filing a notice of appeal, as prescribed in subdivision (a)
> of this rule, accompanied by a motion for leave to appeal prepared
> in accordance with Rule 8003 and with proof of service in
> accordance with Rule 8008.

Fed. R. Bankr. P. 8001(b).

34.     By this Motion, which is prepared in accordance with Rule 8003, the Liquidator

seeks leave to appeal the Bankruptcy Court's Orders denying her motion to dismiss the instant

adversary proceeding and denying her motion for reconsideration of the Bankruptcy Court's

Order denying her motion to dismiss.

## STATEMENT OF QUESTIONS TO BE RAISED
## BY THE APPEAL AND OF THE RELIEF SOUGHT

35.     On appeal are the following questions:

1.      Did the Bankruptcy Court err in holding that it has subject
        matter jurisdiction over the adversary proceeding and that
        the McCarran-Ferguson Act was not implicated because the
        Trustee is not seeking affirmative recovery from CGIC in
        the adversary proceeding?

2.      Did the Bankruptcy court err in determining that it was not
        required to mandatorily abstain from determining the
        adversary proceeding?

3.      Did the Bankruptcy Court err in failing to permissively
        abstain from determining the adversary proceeding?

4.      Did the Bankruptcy Court err in failing to stay the
        adversary proceeding pending resolution of the Trustee's
        proof of claim in the CGIC liquidation?

36.     The Liquidator would seek the following relief on appeal:

1.      that the United States District Court determine that the
        Bankruptcy Court erred in holding that it had subject matter
        jurisdiction and that, as such, the Bankruptcy Court is
        reversed and is prohibited, due to lack of subject matter
        jurisdiction and the requirements of abstention, from
        determining the adversary proceeding;

DEL1 63183-1

2.    that the Bankruptcy Court be reversed and, upon remand, instructed to dismiss the adversary proceeding for lack of subject matter jurisdiction or on abstention grounds or, in the alternative, stay the proceeding pending resolution of the Trustee's proof of claim in the CGIC liquidation; and

3.    that the Liquidator receive any and all other relief to which it is legally and equitably entitled.

## STATEMENT OF THE REASONS WHY AN APPEAL SHOULD BE GRANTED

37.    This appeal presents one of those exceptional circumstances where the Court should grant leave to appeal an interlocutory order because the issue of whether the Bankruptcy Court has subject matter jurisdiction over the adversary proceeding is too important to be denied immediate review. *See In re Sullivan*, 1992 U.S. Dist. LEXIS 3954 (E.D. Pa. March 31, 1992) (granting leave to appeal where question presented is too important to be denied review and too independent of the cause itself to require that consideration be deferred) (a copy of which is attached hereto as Exhibit "B"). "The propriety of some form of interlocutory review seems quite clear if the issue goes to the power of the  . . . court to maker the order it did and only a question of law is presented." 15 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice & Procedure* § 3855 (2d ed. 1986).

38.    Neither 28 U.S.C. § 158(a) nor Bankruptcy Rule 8003 sets forth the standard a district court should use in determining whether to grant leave to appeal interlocutory bankruptcy orders. The Third Circuit, however, has recognized for such situations the standard delineated in 28 U.S.C. § 1292(b):  (i) a controlling issue of law must be involved, (ii) the question must be one where there is substantial ground for difference of opinion, and (iii) an immediate appeal must materially advance the ultimate termination of the litigation. *See In re Bertoli*, 812 F.2d 136, 139 (3d Cir.1987).    The instant situation meets that standard for leave to appeal interlocutory orders.

12

DEL1 63183-1

I.      **The Appeal Involves a Controlling Question of Law**

39.     The question here is whether allowing the adversary proceeding to go forward for the purpose of establishing whether CGIC's conduct in connection with the disputed asset transfers "constituted fraud, illegality and a breach of CGIC's . . . [alleged] fiduciary obligations to the PRS Group" would invalidate, impair, or supersede Ohio's Liquidation Act as applied to CGIC such that the McCarran-Ferguson Act reverse pre-empts the Bankruptcy Court's jurisdiction over the adversary proceeding.  That question is a controlling question of law.

40.     "Controlling" means "serious to the conduct of the litigation, either practically or legally." *P. Schoenfeld Asset Mgmt. LLC v. Cedant Corp.*, 161 F.Supp.2d 355, 358 (D.N.J. 2001).  There can be no question that the issue of whether the Bankruptcy Court has subject matter jurisdiction over the adversary proceeding is serious to the conduct of the case.

41.     A controlling question must be a question of law.  *Hulmes v. Honda Motor Co., Ltd.*, 936 F.Supp. 195, 207 (D.N.J. 1996), *aff'd* 141 F.3d 1153 (3d Cir), *cert. denied*, 525 U.S. 814 (1998).  The question of whether the Bankruptcy Court has jurisdiction over the adversary proceeding clearly is a question of law.

42.     A controlling question of law encompasses a ruling which, if erroneous, would be reversible error on final appeal.  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (*en banc*); *In re Marvel Entertainment Group*, 209 B.R. 832, 837 (D. Del. 1997).  If the Bankruptcy Court erred in deciding that it has subject matter jurisdiction over the adversary proceeding and that the McCarran-Ferguson Act was not implicated because the Trustee is not seeking affirmative recovery from CGIC in the adversary, its decision to allow the adversary proceeding to go forward would be reversible error.

43.     Postponing review creates the risk that the entire proceeding will be rendered

DEL1 63183-1

nugatory. A resolution of the discrete jurisdictional dispute at this time would further the goal of judicial economy because it could obviate the need for further action by the Bankruptcy Court in the adversary proceeding.

**II.    There are Substantial Grounds for Difference of Opinion as to the Conclusions of Law and the Relief Ordered Thereon**

44.    Generally, in order to satisfy the substantial grounds for difference of opinion element, the difference of opinion must arise out of genuine doubt as to the correct legal standard. *P. Schoenfeld Asset Mgmt. LCC v. Cedant Corp.*, 161 F.Supp. 2d 355, 358 (D.N.J. 2001). However, even if there is no difference of opinion, leave will be granted if the bankruptcy court's decision is contrary to well-established law. *See In re Marvel Entertainment Group, Inc.*, 209 B.R. 832, 837 (D. Del. 1997). The issue of whether the Bankruptcy Court erred in determining that the McCarran-Ferguson Act did not divest it of jurisdiction over the adversary proceeding meets this test.

45.    Congress, in enacting the McCarran-Ferguson Act, has affirmed that the States have primary authority to regulate the insurance industry. *See SEC v. National Securities, Inc.*, 393 U.S. 453, 458 (1969). Under McCarran-Ferguson, a federal statute is reverse-preempted if "(1) the federal statute in question does not specifically relate to the business of insurance, (2) the state statute was enacted for the purpose of regulating the business of insurance, and (3) the federal statute would invalidate, impair, or supersede the state statute." See, *e.g., In Re Am West Ins. Group, Inc.*, 285 B.R. 447, 451 (Bankr. C.D. Cal. 2002).

46.    It is quite clear that the Bankruptcy Code does not "specifically relate to the business of insurance." 15 U.S.C. § 1012. As the United States Supreme Court has noted, the "bankruptcy statute uses general language that does not appear to 'specifically relate' to insurance." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 42 (1996); *see also*

14

*United States Dept. of Treas. v. Fabe*, 519 U.S. 491, 501 117 S.Ct. 2202 (1993) (noting that federal bankruptcy priority rules do not "specifically relate" to the business of insurance).

47. Following the Supreme Court's lead, numerous courts applying McCarran-Ferguson's reverse preemption analysis have concluded that the Bankruptcy Code does not specifically relate to the business of insurance. *In re PRS Insurance Group*, 294 B.R. 609, 612 (Bankr. D. Del. 2003) ("[W]e conclude that the Bankruptcy Code does not specifically relate to the business of insurance."); *In re Advanced Cellular Systems*, 235 B.R. 713 (Bankr. D. P.R. 1999) ("[T]here is no question that the Bankruptcy Code does not specifically relate to the business of insurance.").

48. The Ohio Liquidation Act, on the other hand, clearly <u>does</u> have the purpose of regulating the business of insurance. The Ohio Liquidation Act is "intended to 'protect the interests of insureds, claimants, creditors, and the public generally by vesting the Ohio Superintendent of Insurance with extensive powers to investigate and ensure the financial condition of insurers operating within the state." *Benjamin v. John Hancock Financial Services, Inc.*, Case No. C2-04-184 (S.D. Ohio, August 18, 2004) (Judge George C. Smith) (a copy of which is attached hereto as Exhibit "C"). In recognition of these purposes, the Supreme Court in *United States Department of the Treasury v. Fabe*, 508 U.S. 491 (1993) held that the Ohio Liquidation Act creates a "complex and specialized administrative structure for the regulation of insurance companies from inception to dissolution." *Fabe*, 508 U.S. at 494. The Ohio Liquidation Act therefore quite clearly regulates the business of insurance. *Id.*; *see also In re PRS Insurance Group*, 294 B.R. at 612 ("[W]e conclude that the [Ohio Liquidation Act] . . . was enacted for the purpose of regulating the business of insurance."); *In re Advanced Cellular Systems*, 235 B.R. at 723 (holding that provisions of Puerto Rico's liquidation act conferring

upon the liquidation court exclusive jurisdiction over all issues related to insolvent insurer "is a law enacted for the purpose of regulating the business of insurance.").

49.    Where as here, the first two factors of McCarran-Ferguson are present, a federal statute is reverse preempted and may not be applied whenever application of the "federal statute would invalidate, impair or supersede the state statute." *See Humana, Inc. v. Forsyth*, 525 U.S. 299, 307-310, 119 S.Ct. 710 (1999). In *Humana*, the Court concluded that if a federal law directly conflicts with state regulation and application of the federal law would frustrate any declared state policy **or** interfere with a State's administrative regime, the McCarran-Ferguson Act precludes application of the federal law. *Id.*

50.    It is clear that allowing this adversary proceeding to proceed would directly conflict with Ohio's regulatory scheme that enjoins actions against the CGIC estate. Allowing the adversary proceeding to proceed so that the Trustee can try to establish the predicate for equitable subordination under § 510(c) of CGIC's proof of claim also <u>would</u> interfere with Ohio's administrative regime regulating insurance company liquidations, which grants the Ohio Court exclusive jurisdiction over claims, including counterclaims, against the CGIC estate.

51.    The fact that the Trustee is not seeking any monetary recovery from CGIC in the adversary proceeding is not in and of itself determinative of the McCarran-Ferguson jurisdictional issue. The affirmative claims made by the Trustee in the CGIC liquidation proceeding concerning CGIC's alleged misconduct in connection with the disputed asset transfers and the equitable subordination defense he attempts to assert with this new adversary proceeding are the two sides of the same coin. The Liquidation Act provides a specific proof of claim process for the determination of claims against an insurance company's liquidation estate. This process does not contemplate litigation of the claims in a court other than the Ohio Court.

Any determination by this Court of CGIC's conduct in connection with the disputed asset transfers in the context of adjudicating the Trustee's § 510(c) equitable subordination defense could have a preclusive effect with regard to the Trustee's affirmative claims for damages in the CGIC liquidation proceeding. Such an outcome would be an impermissible interference with the Liquidation Act and the Ohio Court's exclusive jurisdiction.

52.    Thus, the Bankruptcy Court erred when it concluded that it was only exercising its exclusive jurisdiction over equitable subordination claims, when it determined to allow the adversary proceeding to go forward. As noted, Ohio's Liquidation Act requires that all claims against an insurer in liquidation must be asserted and adjudicated exclusively within the context of the liquidation proceeding. Accordingly, under the proof of claim process established by the Ohio liquidation statute, the Ohio Court will hear and determine all disputed claims asserted against CGIC, including the Trustee's claims that CGIC's conduct in connection with the transfers "constituted fraud, illegality and a breach of CGIC's . . . [alleged] fiduciary obligations to the PRS Group." Ohio Rev. Code Ann. §§ 3903.35 - 3903.44.

53.    The Bankruptcy Court's exercise of jurisdiction over this adversary proceeding would impair the Ohio Court's ability to effectively administer the liquidation of CGIC, because the same conduct, transfers and assets at issue in this action are also before the Ohio Court. Any ruling by the Bankruptcy Court on the claims asserted in this action will implicate the liquidation proceeding. Moreover, the issues presented in this action implicate Ohio law, and are best left to the jurisdiction of the Ohio Court. Once the Ohio Court has adjudicated the Trustee's claims, the Bankruptcy Court can then look to that adjudication and then determine whether the Liquidator's claims should be equitably subordinated under Bankruptcy Code § 510(c).

III.    **An Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation**

54.    An appeal would materially advance the ultimate termination of the adversary proceeding because, if the Liquidator is successful on her appeal of the Orders, the adversary proceeding would necessarily be dismissed for lack of subject matter jurisdiction or at the least stayed thereby ending the litigation.

55.    Further, immediate appeal will prevent the unnecessary and wasteful incurrence of significant costs to both the Debtors and the Liquidator in having to prepare at the same time for adjudications in two different courts some 500 miles apart.

56.    This multiplicity of litigation over the same conduct, transfers, and assets would only serve to drain the resources of the CGIC liquidation estate, to the detriment of the innocent policyholders and creditors who are beneficiaries of the liquidation estate. Likewise, allowing the adversary proceeding to continue would unnecessarily deplete the assets of the PRS Group estates and would be a waste of judicial resources given that the issue of whether CGIC's conduct in connection with the disputed asset transfers "constituted fraud, illegality and a breach of CGIC's . . . [alleged] fiduciary obligations to the PRS Group" is joined in the Ohio Court and will be determined there.    Going forward with the adversary proceeding also would inappropriately expose CGIC and the PRS Group to the possibility of inconsistent results between the determinations of the Ohio Court and this Court on the nature of CGIC's obligations and conduct.

## CONCLUSION

Interlocutory appeals are available to prevent grave injustice in substantial and serious matters. The Liquidator files this Motion because it has no other means available to obtain relief from the Bankruptcy Court's erroneous ruling that the adversary proceeding should go forward.

18

Because good cause for granting immediate leave to appeal the Bankruptcy Court's Orders exists, the Liquidator respectfully requests that the Motion be GRANTED and leave given for an interlocutory appeal from the Bankruptcy Court's two Orders.

Dated:  December 28, 2005
           Wilmington, Delaware

Respectfully submitted,

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

By: _Steven K. Kortanek_ _____
    Steven K. Kortanek (#3106)
    919 Market Street, Suite 1000
    Wilmington, DE 19801
    Telephone: (302) 426-1189
    Facsimile: (302) 426-9193

               -and-

DINSMORE & SHOHL LLP
    Stephen G. Schweller
    Susan M. Luken
    1900 Chemed Center
    255 East Fifth Street
    Cincinnati, Ohio 45202
    (513) 977-8200

*Ann H. Womer Benjamin, Superintendent of Insurance, Ohio Department of Insurance, in her capacity as Liquidator of Credit General Insurance Company and Credit General Indemnity Company*

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| PRS INSURANCE GROUP, INC., et al., | Case Nos. 00-4070 (MFW) |
| | (Jointly Administered) |
| Debtors. | |
| SEAN C. LOGAN, the Chapter 11 Trustee of PRS INSURANCE GROUP, INC., et al., | Adv. Proc. No. 05-50819 |
| Plaintiff, | |
| v. | |
| CREDIT GENERAL INSURANCE COMPANY and CREDIT GENERAL INDEMNITY COMPANY | |
| Defendants. | |

MEMORANDUM OPINION[1]

Before the Court is the Motion of the Liquidator of Credit
General Insurance Company and Credit General Indemnity Company
(collectively "CGIC") to Dismiss or Stay the above adversary
action on the grounds that the McCarran-Ferguson Act prevents
this Court from exercising jurisdiction over the chapter 11
Trustee's complaint, which seeks to equitably subordinate CGIC's
claim under section 510(c) of the Bankruptcy Code.  For the
reasons stated below, the Court will deny the Motion.

---

[1]  This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052.

Dkt. No. 21
12-19-05

I.    BACKGROUND

The facts underlying this case are detailed in the Court's
Memorandum Opinion dated September 23, 2005, in adversary
proceeding No. 05-50818 and will not be repeated here.  See Logan
v. Credit Gen. Ins. Co. (In re PRS Ins. Group), 331 B.R. 580
(Bankr. D. Del. 2005).

Pertinent to this adversary proceeding, however, is the
Trustee's allegation that CGIC is an insider of PRS Insurance
Group, Inc. (the "Debtor"), and that CGIC engaged in inequitable
pre-petition conduct by participating in the transfer of
approximately $20 million in assets from the Debtor to CGIC for
little or no consideration.

II.    DISCUSSION

CGIC seeks to dismiss the Trustee's adversary complaint by
arguing that the McCarran-Ferguson Act reverse preempts this
Court's exercise of jurisdiction over the equitable subordination
action because it interferes with CGIC's Ohio State Court
liquidation proceeding.  Even if this Court has jurisdiction,
CGIC argues that it should abstain from hearing the dispute or
stay the proceedings in deference to CGIC's Ohio proceeding.

In a companion adversary proceeding, No. 05-50818, the
Trustee brought fraudulent and preferential transfer actions
against CGIC, solely to establish the predicate (pursuant to

-2-

section 502(d) of the Bankruptcy Code) for the Trustee's
objection to the $45 million proof of claim filed by CGIC against
the Debtor.  In the September 23 Memorandum Opinion, this Court
held that the McCarran-Ferguson Act did not reverse preempt that
action because the Trustee was not seeking affirmative relief
from CGIC but was merely objecting to allowance of CGIC's claim.
Logan, 331 B.R. at 589.  This Court concluded that it had
exclusive jurisdiction over the allowance of claims against the
estate.  Id. at 588.  Moreover, this Court held that the
Trustee's claim objection did not destroy the efficiency and
economy of the Ohio proceeding – where the Trustee had asserted
similar claims for affirmative relief – because CGIC chose this
forum by filing its proof of claim.  Id.  Further, this Court
concluded that there is relatively little difference in cost to
CGIC to litigate the issues raised by the Trustee's adversary
proceeding in this Court versus the Ohio State Court, which could
not even hear all the issues presented by the Trustee.  Id.

     For the same reasons articulated in the earlier Memorandum
Opinion (and in the Memorandum Opinion dated December 8, 2005,
denying reconsideration), the Court concludes that the Trustee's
complaint to subordinate CGIC's claim is not reverse preempted by
the McCarran-Ferguson Act.

     Similarly, abstention is not appropriate under either
Younger v. Harris, 401 U.S. 37 (1971) or Burford v. Sun Oil Co.,

-3-

319 U.S. 315 (1943), because the Ohio State Court does not have
jurisdiction to subordinate CGIC's claim in the Debtor's
bankruptcy proceeding.  Only this Court has jurisdiction to
determine the allowance and priority of claims filed against the
Debtor.  See, e.g., In re D. M. Barber, Inc., 13 B.R. 962, 965
(Bankr. N.D. Tex. 1981) (holding that the bankruptcy court
"retains the exclusive jurisdiction to determine the extent to
which any such proof of claim should be allowed and priority
treatment accorded it under the distribution hierarchy set forth
in the Bankruptcy Code"); 4 Collier on Bankruptcy ¶ 502.030[1][a]
(Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2005)
("Regardless of the method chosen for liquidation of a claim, the
bankruptcy court always retains the jurisdiction and sole right
to determine the 'allowability' of the claim under the applicable
standards set forth in section 502.").

    For the same reasons, a stay of the Trustee's adversary
proceeding here is also not warranted.  Further, the Court takes
seriously its obligation to exercise the jurisdiction granted to
it by Congress.  See, e.g., Colorado River Water Conservation
Dist. v. United States, 424 U.S. 800, 817 (1976) (noting "the
virtually unflagging obligation of the federal courts to exercise
the jurisdiction given them" by Congress).

-4-

III. CONCLUSION

    For the reasons set forth above, and in this Court's Memorandum Opinions dated September 23 and December 8, 2005, in Adversary Proceeding No. 05-50818, the Court will deny the Motion of CGIC to dismiss or stay this case.

    An appropriate order is attached.

                    BY THE COURT:

Dated: December 19, 2005           _Mary F. Walrath_
                          Mary F. Walrath
                          United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PRS INSURANCE GROUP, INC., | ) | Case Nos. 00-4070 (MFW) |
| et al., | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| SEAN C. LOGAN, the Chapter 11 | ) | |
| Trustee of PRS INSURANCE | ) | |
| GROUP, INC., et al., | ) | Adv. Proc. No. 05-50819 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CREDIT GENERAL INSURANCE | ) | |
| COMPANY and CREDIT GENERAL | ) | |
| INDEMNITY COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**O R D E R**

AND NOW, this **19th** day of **DECEMBER, 2005,** upon consideration

of the Motion to Dismiss or Stay filed by Credit General

Insurance Company and Credit General Indemnity Company, and the

response thereto of the Trustee, it is hereby

**ORDERED** that the Motion is **DENIED.**

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc:  Steven K. Kortanek, Esquire[1]

_____

    [1]  Counsel is to distribute a copy of this Order on all
interested parties and file a Certificate of Service with the
Court.

D.I. No. 22
12-19-05

# EXHIBIT B



Not Reported in F.Supp.                                                Page 1
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
(Cite as: 1992 WL 68613 (E.D.Pa.))

**H**

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
In re Daniel J. SULLIVAN, debtor.
**Civ. A. No. 91-5501.**

**March 31, 1992.**

Allen B. Dubroff, Thomas J. Maiorino, Astor, Weiss & Newman, Philadelphia, Pa.,
for appellant.

Michael L. Temin, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for
appellee.

Allen B. Dubroff, Thomas J. Maiorino, Astor, Weiss & Newman, Philadelphia, Pa.,
for debtor.

Frederick Baker, pros se.

*MEMORANDUM*

O'NEILL, District Judge.

I. *Introduction*

*1 Debtor Daniel J. Sullivan appeals from an Order of Chief Bankruptcy Judge
Thomas M. Twardowski denying Sullivan's motion to disqualify the law firm Wolf,
Block, Schorr & Solis-Cohen as counsel to Robert Taylor, the trustee of Sullivan's
estate.    Sullivan argues that because of Wolf, Block's past representations of
parties against whom he currently is in litigation, and because Wolf, Block is a
creditor of MMRT, the firm has interests adverse to the estate and is not
disinterested for the purposes of Section 327(a) of the Bankruptcy Code.    For the
reasons stated below, I conclude that the Order of the Bankruptcy Court should be
affirmed.

II. *Factual Background*

On July 16, 1987, Sullivan filed a voluntary petition pursuant to Chapter 11 of
the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District
of Pennsylvania.    In January, 1990, Judge Twardowski issued an order appointing
Robert Taylor as Trustee in the proceeding.    Soon thereafter, the Judge issued an
order authorizing Taylor to employ Wolf, Block as his attorneys during the Chapter
11 proceedings.

In March, 1990, Sullivan moved to disqualify Wolf, Block from serving as counsel
to Taylor, alleging that Wolf, Block is not a disinterested person under Section
327(a) of the Bankruptcy Code and that Wolf Block holds or represents interests
adverse to the Sullivan estate.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
**(Cite as: 1992 WL 68613 (E.D.Pa.))**


  Specifically, appellant Sullivan asserts that Wolf, Block is not disinterested
because of the firm's former representation of MMRT Associates, its representation
of Elliott Goldberg and the Goldberg Group, and its standing as a creditor of MMRT.
MMRT and Sullivan currently are involved in litigation regarding an interest in
Columbus Plaza Associates, which bought an Atlantic City property from MMRT.    MMRT
has sued Sullivan seeking a declaration that Sullivan received a five percent
interest in Columbus Plaza Associates without consideration and that said interest
belongs to MMRT.    MMRT also seeks to impose a constructive trust against the
$610,000 settlement proceeds received by Sullivan in the Columbus Plaza Associates
settlement.    In a counterclaim, Sullivan has asserted that MMRT owes him
additional money as a result of the sale by MMRT of its real estate to Columbus
Plaza Associates.    Sullivan has asserted as well that Elliott Goldberg and the
Goldberg Group are recipients of funds paid in the Columbus Plaza Associates
settlement and would gain by a defeat of Sullivan's counterclaim.

  H. Robert Fiebach, a partner of Wolf, Block, represented MMRT in connection with
MMRT's attempts to sell its property to Columbus Plaza Associates in 1980 or 1981
and after MMRT's bankruptcy (in which Fiebach did not represent MMRT), from 1984 to
1986 or 1987.    Appellee Taylor points out that Fiebach was not aware of any
dispute between Sullivan and MMRT and was not involved in the transaction by which
Sullivan acquired his note from Columbus Plaza Associates.   [FN1]   Taylor also
states that Fiebach represented the Goldberg group sporadically, in non-complex
matters, and that the representation ended in 1989, before Sullivan filed for
bankruptcy.

  *2 Counsel for Taylor informed the Court by letter dated March 25, 1992 that MMRT
Associates owes Wolf, Block $4,093.60, which represents the balance of a bill
submitted by Wolf, Block to MMRT dated November 14, 1988 in the amount of $43,117.
However, at a conference I held with counsel for Sullivan and Taylor on March 30,
1992, counsel for Taylor has represented to the Court that it will waive the
remaining fees it is owed by MMRT.

  On July 18, 1991, Judge Twardowski entered an Order denying Sullivan's motion to
disqualify Wolf, Block.    Judge Twardowski concluded that Wolf, Block does not hold
or represent an interest adverse to the estate in violation of <u>Section 327(a) of
the Bankruptcy Code</u> and that Wolf, Block is "disinterested" within the meaning of
<u>Section 327(a)</u>.    Judge Twardowski also concluded that the prior representations by
Fiebach did not violate the Pennsylvania Rules of Professional Conduct.   *In re
Daniel J. Sullivan,* No. 87-03570T (Bankr.E.D.Pa. July 18, 1991).

  III. *Standard of Review*

  I first must determine the district court's standard of review of a bankruptcy
court's decision.    Under Bankr.Rule 8013, a district court may set aside a
bankruptcy court's factual findings only if the findings are clearly erroneous.
11 U.S.C.A.Bankr.Rule 8013; *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66,
69 (3d Cir.1989).    The "clearly erroneous" standard, however, does not apply to
questions of law. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 103
(3d Cir.1981); *In re Philadelphia Athletic Club, Inc.,* 20 Bankr. 328
(E.D.Pa.1982).    The bankruptcy court's legal conclusions are subject to the
district court's plenary review. *J.P. Fyfe,* 891 F.2d at 69; *Brown v. Pennsylvania
State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988); *Frymire v. Paine
Webber, Inc.,* 107 Bankr. 506, 509 (E.D.Pa.1989) (bankruptcy court's legal
conclusions may not be approved without district court's independent determination
of legal questions).

                    ®  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                           Page 3
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
(Cite as: 1992 WL 68613 (E.D.Pa.))

   The Court of Appeals for the Third Circuit has held that the question of whether
counsel should be disqualified from representing a party because of an alleged
conflict of interest is a legal one subject to plenary review. *United States v.
Miller,* 624 F.2d 1198, 1201 (3d Cir.1980); *Kramer v. Scientific Control Corp.,* 534
F.2d 1085, 1088 (3d Cir.), *cert. denied,* 429 U.S. 830 (1976).  In addition, this
Court has previously held that a bankruptcy court's ruling on whether counsel to a
trustee should be disqualified pursuant to Section 327(a) of the Bankruptcy Code is
a legal conclusion "not entitled to a presumption of correctness." *Philadelphia
Athletic Club,* 20 Bankr. at 331.

 IV. *Discussion*

 A. *Jurisdiction*

   Pursuant to 28 U.S.C. § 1334(a), the district court has appellate jurisdiction
over final judgments, orders and decrees of the bankruptcy court. *In re Allegheny
Int'l., Inc.,* 107 Bankr. 518 (W.D.Pa.1989); *Philadelphia Athletic Club,* 20 Bankr.
at 332.  With leave of court, this Court also has jurisdiction over interlocutory
orders and decrees. *Id.*

   *3 Sullivan asserts that in the bankruptcy context Judge Twardowski's Order should
be construed as final, but that even if I conclude that it is interlocutory it is
within my discretion to hear an appeal of such an Order. Taylor argues that the
Bankruptcy Judge's Order refusing to disqualify counsel is interlocutory and not
appealable to the district court because Sullivan did not file a motion for leave
to appeal.

 1. *Finality of Bankruptcy Order*

   In the context of general civil litigation, orders denying a motion for
disqualification of an attorney are considered interlocutory and are not subject to
appeal prior to resolution of the merits of the dispute. *Firestone Tire and Rubber
Co. v. Risjord,* 449 U.S. 368 (1981).

   In approaching the finality question, however, the Court of Appeals has recognized
that "[t]he unique characteristics of bankruptcy cases have led us to 'consistently
consider[ ] finality in a more pragmatic and less technical way in bankruptcy cases
than in other situations.' " *In re BH & P, Inc.,* 949 F.2d 1300, 1306 (3d
Cir.1991), quoting *F/S Airlease II, Inc., v. Simon,* 844 F.2d 99, 103 (3d Cir.),
*cert. denied,* 488 U.S. 852 (1988).

   Despite this pragmatic approach, the Court of Appeals also has expressed a
"general reluctance to adopt an expansive interpretation of finality." *In re
Brown,* 803 F.2d 120, 122 (3d Cir.1986).  Therefore, orders that do not fully
adjudicate a specific adversary proceeding or that require further factual
development are governed by the ordinary finality precepts of routine civil
litigation. *United States v. Nicolet, Inc.,* 857 F.2d 202, 206-7 (3d Cir.1988); *In
re White Beauty View, Inc.,* 841 F.2d 524, 526 (3d Cir.1988); *Allegheny Int'l.,* 107
Bankr. at 521.  Moreover, the relaxed concept of finality only applies where the
order on appeal raises an issue peculiar to bankruptcy. *Nicolet,* 857 F.2d at 207;
*Allegheny Int'l.,* 107 Bankr. at 521.  Therefore, the traditional finality
requirements apply where the order does not affect either the debtor's estate or
the other creditors involved in the proceeding. *Brown,* 803 F.2d at 123.

 Several courts have held that orders by bankruptcy judges concerning the

®  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
(Cite as: 1992 WL 68613 (E.D.Pa.))

appointment or disqualification of counsel are not final.  *See* *In re Delta Services
Industries,* 782 F.2d 1267 (5th Cir.1986);  *Allegheny Int'l.,* 107 Bankr. at 522;
*Philadelphia Athletic Club,* 20 Bankr. at 332;  *In re Lee Way Holding Co.,* 102
Bankr. 616 (S.D.Ohio 1988).

  In this case, Judge Twardowski's Order does not fully adjudicate a specific
adversary proceeding.   Also, the order deals with the disqualification of counsel,
which is not an issue peculiar to bankruptcy.   Nor does the order affect the
debtor's estate or the other creditors involved in the proceeding. Accordingly, I
conclude that Judge Twardowski's Order denying Sullivan's motion to disqualify
counsel is interlocutory and not appealable as of right.

  2. *Appealability of Interlocutory Order*

  *4 Despite the fact that the Order is interlocutory, as stated above, pursuant to
28 U.S.C. § 158(a), district courts have discretion to grant leave to appeal from
interlocutory orders of bankruptcy courts.  *Universal Minerals,* 669 F.2d at 100-
101. [FN2]

  Interlocutory appeals are allowed when three requirements are satisfied:  (1) a
controlling question of law is involved;  (2) the question is one where there is
substantial ground for difference of opinion;  and (3) an immediate appeal would
materially advance the ultimate termination of the litigation.  *In re Neshaminy
Office Bldg. Associates,* 81 Bankr. 301, 303 (E.D.Pa.1987), citing 28 U.S.C. §
1292(b).

  In *Philadelphia Athletic Club,* this Court exercised its discretion by entertaining
an interlocutory appeal of a bankruptcy judge's Order refusing to disqualify
counsel because the question presented by such an appeal is "too important to be
denied review and too independent of the cause itself to require that ...
consideration be deferred." *Id.,* at 332, citing *Kramer v. Scientific Control
Corp.,* 534 F.2d at 1088 and *In re Fine Paper Antitrust Litigation,* 617 F.2d 22, 26
(3d Cir.1980).   *See also Paolino,* 60 Bankr. at 828-29 (immediate review of
bankruptcy judge's order appointing trustee is preferable in view of significance
of such an order);  *RPC Corp.,* 114 Bankr. 116, 119 (M.D.N.C.1990) (district court
will exercise its discretion and grant leave to appeal bankruptcy court's Order
denying attorney disqualification motion because appeal is dispositive of validity
of counsel's employment and no purpose is served in delaying appeal).

  The issue here is identical to that in *Philadelphia Athletic Club.*   The question
presented is independent of the cause of action itself and is a significant one.
Moreover, the question presented involves a controlling issue of law where there is
substantial ground for difference of opinion.   An immediate appeal would also
materially advance the ultimate termination of the litigation.   Finally, no
purpose would be served in delaying the appeal. Accordingly, I conclude that the
requirements for hearing interlocutory appeals have been satisfied and I will grant
leave to appeal.

  B. *Disqualification under the Bankruptcy Code*

  Section 327(a) of the Bankruptcy Code provides:

  Except as otherwise provided in this section, the trustee, with the court's
approval, may employ one or more attorneys ... that do not hold or represent an
interest adverse to the estate, and that are disinterested persons, to represent or
assist the trustee in carrying out the trustee's duties under this title.

                ®  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                 Page 5
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
(Cite as: 1992 WL 68613 (E.D.Pa.))


   11 U.S.C.A. § 327(a) (West 1990).

 The Code defines "disinterested person" as a person that "does not have an
interest materially adverse to the interest of the estate ... by reason of any
direct or indirect relationship to, connection with, or interest in, the debtor ...
or for any other reason." 11 U.S.C.A. § 101(14)(E).

 *5 The standards for disinterestedness are to be rigidly applied. *In re Jartran,
Inc.*, 78 B.R. 524, 526 (Bankr.N.D.Ill.1987). In *Philadelphia Athletic Club*, this
Court stated:

 [T]he definition of disinterested person ... promotes the policy that as a general
principle professionals engaged in the conduct of a bankruptcy case should be free
of the slightest personal interest which might be reflected in their decisions
concerning matters of the debtor's estate or which might impair the high degree of
impartiality and detached judgment expected of them during the course of
administration.

   *Philadelphia Athletic Club*, 20 Bankr. at 334 (quoting 1 Collier Bankruptcy Manual
§ 101.13 (1981)). [FN3]

 While the test of disinterestedness is to be applied rigidly, it is not to be
applied blindly. *Jartran*, 78 Bankr. at 526. The appropriate query is "whether
counsel possesses an interest 'such as would color the requisite independent
judgment and impartial attitude.' " *Id.*, quoting *In re O'Connor*, 52 Bankr. 892,
899 (Bankr.W.D.Okla.1985). It is not sufficient that the trustee and his counsel
actually be disinterested; the appearance of interestedness must also be avoided.
*Philadelphia Athletic Club*, 20 Bankr. at 335, citing *In re Perry, Adams & Lewis
Securities, Inc.*, 5 Bankr. 63, 64 (Bkrtcy.W.D.Mo.1980).

 Sullivan relies on *Philadelphia Athletic Club*, in which this Court, pursuant to
Section 327(a) of the Bankruptcy Code and the Code of Professional Responsibility,
disqualified a law firm from its representation of a trustee in a bankruptcy
proceeding because counsel had previously represented a party that claimed to own a
fifty percent interest in the corporation that held the shares of the debtor
corporation. In that case, the dispute concerning ownership of the corporation
holding the shares of the debtor was ongoing at the time of the bankruptcy
proceeding. *Id.*, at 330-331.

 The Court held that because of its prior representation the law firm had an
interest materially adverse to the estate of the debtor:

 [A]n attorney for the trustee should not place himself in a position where he may
be required to choose between conflicting interests or duties.... [T]he
independence and impartiality of [the law firm's] judgment or advice to the trustee
regarding the interests of the debtor will be impaired by [its] prior
representation.... When performing [its] duties to the estate, [the firm] may be
tempted, perhaps unconsciously, to cater to the interests of [its] former clients,
rather than to make decisions or give advice solely with the best interests of the
estate in mind.... Thus, [the firm] has an interest which is at least potentially
adverse to the estate of the debtor.

 Id., at 337-38.

 Taylor relies on *In re Highway Truck Drivers & Helpers Local Union # 107*, 86

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
(Cite as: 1992 WL 68613 (E.D.Pa.))

Bankr. 404 (Bankr.E.D.Pa.1988).   In that case, the bankruptcy court refused to
disqualify a law firm or one of the firm's partners from serving as counsel to
several creditors in a bankruptcy proceeding;  the partner had represented the
debtor at one meeting prior to the debtor's filing for Chapter 11 relief and prior
to the time when the attorney worked at the firm representing the creditors:
"[G]iven the limited scope and duration of [the attorney's] prior representation of
the debtor more than three years ago ... [the attorney] did not acquire
confidential information or material substantially related to the representation of
the ... creditors."   _Id., at 413._

 *6 Although _Highway Truck Drivers & Helpers_ involved a potential conflict of
interest, the Court there was concerned about protecting the potential confidences
of the debtor from becoming known to the attorneys for the creditor;  the case did
not involve the questions whether counsel for the trustee was disinterested or held
an interest materially adverse to the estate.   Thus, _§ 327(a) of the Bankruptcy
Code_ was not even in issue;  in reaching its decision, the Court relied on the Code
of Professional Responsibility.

 Despite several factual differences, _Philadelphia Athletic Club_ is more directly
on point.   In that case, the Court's concern was that counsel for the trustee
would not be able to be impartial or disinterested as required by _§ 327(a) of the_
_Bankruptcy Code_ because of prior representations of a creditor in the bankruptcy
proceeding.

 _Philadelphia Athletic Club_ is distinguishable factually from the instant case,
however.   In that case, the law firm's prior dealings with the creditor were more
directly related to the bankruptcy dispute in which it had been appointed trustee
than in the instant case.   Here, Wolf, Block's representation of MMRT Associates
ended more than four years prior to the bankruptcy proceeding.   There is evidence
in the record that its representation of the Goldberg interests was sporadic and
related to isolated matters and that the representation ended in 1989.

 In addition, Mr. Fiebach testified in his deposition that he was not aware of any
dispute between Sullivan and MMRT.   Therefore, assuming without deciding that
Sullivan's dispute with MMRT does in fact relate to Wolf, Block's prior
representation of MMRT, such relation is sufficiently remote so as not to require
Wolf, Block's disqualification as counsel to the trustee in this action.

 Before Wolf, Block represented to the Court that it agreed to waive the money owed
it by MMRT, I was concerned about Wolf, Block's status as a creditor of MMRT.
Although MMRT did not owe Wolf, Block a great deal of money, the fact that any
money was owed at all meant that Wolf, Block could have benefitted were MMRT to be
successful in its litigation against Sullivan.   However, as Wolf, Block is no
longer a creditor of MMRT and no longer stands to benefit if MMRT is successful in
its case against Sullivan, I conclude that Wolf, Block should not be disqualified
for this reason._[FN4]_

 Therefore, despite the rigid standards for disinterestedness under _Section 327(a),_
which requires that counsel for the trustee be free of "the slightest personal
interest which might be reflected in [its] decisions concerning matters of the
debtor's estate," _Philadelphia Athletic Club, 20 Bankr. at 334,_ I conclude that the
Order of the Bankruptcy Court should be affirmed.

                                   _ORDER_
 AND NOW, this 31st day of March, 1992, upon consideration of appellant Daniel J.
Sullivan's appeal from an Order of the Honorable Thomas M. Twardowski, United

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                          Page 7
Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)
**(Cite as: 1992 WL 68613 (E.D.Pa.))**

States Bankruptcy Judge, denying Sullivan's motion to disqualify Wolf, Block,
Schorr & Solis-Cohen from serving as counsel to the trustee, for the reasons stated
in the accompanying memorandum, it is hereby ORDERED that the Order of the
Bankruptcy Court is AFFIRMED.

> FN1. The parties' briefs do not describe in detail the structure of the
> Columbus Plaza transaction but I do not need to know its details in order to
> decide the questions presented by this appeal.

> FN2. Although Sullivan did not move for leave to appeal, Rule 8003(c) of the
> Bankruptcy Code permits the District Court to treat a notice of appeal as a
> motion for leave to appeal and I will do so. *See In re Jablonski,* 88 Bankr.
> 652, 655 (E.D.Pa.1988); *In re Paolino,* 60 B.R. 828, 828-29 (E.D.Pa.1986);
> *In re RPC Corp.,* 114 Bankr. 116, 119 (M.D.N.C.1990).

> FN3. Taylor argues that in this jurisdiction the ethical rules governing
> attorneys' conflicts of interests provide the standards for disqualification
> of counsel.    In support of its proposition, Taylor cites *In re Highway Truck
> Drivers & Helpers Local Union # 107,* 86 Bankr. 404 (Bankr.E.D.Pa.1988), in
> which the Bankruptcy Judge based his decision refusing to disqualify counsel
> for a creditor on the Code of Professional Responsibility, subsequently
> superseded by the Rules of Professional Conduct.    In that case, the Judge
> did not consider whether the attorney should be disqualified under the
> Bankruptcy Code.    In this case, however, Sullivan has moved to disqualify
> Wolf, Block pursuant to <u>Section 327(a) of the Bankruptcy Code</u>.    Both <u>Section
> 327(a)</u> and <u>Rule 1.9 of the</u> <u>Rules of Professional Conduct</u> (dealing with
> conflicts involving former clients) protect against conflicts of interest,
> but they are designed to protect different entities.  <u>Section 327(a)</u> is
> designed to protect the interests of the estate;  <u>Rule 1.9</u> is designed "to
> preserve the confidences of the former client." *See Reading Anthracite Co.
> v. Lehigh Coal & Navigation Co.,* 771 F.Supp. 113, 115 (E.D.Pa.1991).
> Because I conclude that Wolf, Block should not be disqualified pursuant to
> <u>Section 327(a)</u>, I do not have to pass upon Taylor's contention that the Rules
> control.

> FN4. There is no contention that the existence of this debt influenced Wolf,
> Block in its representation of the trustee prior to forgiveness of the debt.

Not Reported in F.Supp., 1992 WL 68613 (E.D.Pa.)

**Motions, Pleadings and Filings** <u>(Back to top)</u>

• <u>2:91cv05501</u> (Docket) (Aug. 28, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ann H. Womer Benjamin,                    :
Ohio Superintendent of Insurance,
in her capacity as Liquidator of          :    Case No. 2:04-CV-00184
Credit General Insurance
Company and Credit General                :    Judge Smith
Indemnity Company,
                                          :    Magistrate Judge Abel
        Plaintiff
                                          :
    v.

John Hancock Financial Services,
Inc.,

        Defendant

**Order**

Plaintiff Ann H. Womer Benjamin, Ohio Superintendent of Insurance, in her

capacity as Liquidator ("Liquidator") for Credit General Insurance Company

and Credit General Indemnity Company ("CGIC") filed a complaint in the

Franklin County Court of Common Pleas on January 30, 2004 alleging breach of

contract, declaratory judgment and bad faith against defendant John

Hancock Financial Services, Inc. ("John Hancock"). John Hancock removed

the action to this Court on March 4, 2004 on the basis of 28 U.S.C. §§ 1332 and

1441. This action involves John Hancock's reinsurance coverage of CGIC

insurance policies. The Liquidator, pursuant to Ohio Revised Code § 3903.04(E)

of the Liquidation Act, has filed an action in the Liquidation Court to collect and

1

marshal the assets of the CGIC estate in an effort to protect and ensure payment of policyholder claims.

This matter is before the Court on plaintiff's April 5, 2004 motion to remand (doc. 8), defendant John Hancock's May 14, 2004 memorandum in opposition to the Liquidator's motion to remand (doc. 13), the Liquidator's May 25, 2004 reply in support of its motion to remand (doc. 15), John Hancock's June 2, 2004 motion for leave to file *instanter* sur-reply in response to the Liquidator's reply brief in support of her motion to remand (doc. 16), and the Liquidator's June 21, 2004 response in opposition to motion for leave to file *instanter* sur-reply (doc. 18).

## I.    **Arguments of the Parties**

### A.    **Plaintiff**

The Liquidator argues that the statutory scheme established by the Ohio General Assembly requires that such liquidation actions be prosecuted in the Liquidation Court, and judges of the Southern District of Ohio have consistently held that the federal court's diversity jurisdiction is reverse preempted by the Liquidation Act based on the McCarran-Ferguson Act, 15 U.S.C. § 1101 *et seq.*

The Liquidator also argues that disputes and actions against reinsurers directly involve the business of insurance and payments to policyholders are thus reverse preempted under the McCarran-Ferguson Act because the reinsurance

2

relationship is directly implicated by the Ohio insolvency and insurance regulatory scheme.

The Liquidator further argues that despite the presence of arbitration clauses in the contracts entered by CGIC and John Hancock, the Liquidator cannot be forced to arbitrate because Ohio law favors resolution of claims and defenses against an insolvent insured in the Liquidation Court. Absent express statutory authorization, Ohio law disfavors arbitration. The Liquidator maintains that it is the province of the Liquidation Court to determine whether Hancock's demands for arbitration are appropriate. Plaintiff argues that assuming the Federal Arbitration Act ("FAA") is applicable, it too is reverse preempted by the McCarran-Ferguson act to the extent that it conflicts with the Liquidation Act, because the dispute is inextricably part of the business of CGIC's insurance of policyholders.

In the alternative, the Liquidator argues that if this Court concludes that it has subject matter jurisdiction, it should abstain from exercising that jurisdiction under the *Burford* doctrine. Plaintiff maintains that the *Burford* doctrine protects complex state administrative schemes from undue interference by federal courts.

Finally, the Liquidator seeks the an award of costs, actual expenses and attorney fees incurred as a result of the removal pursuant 28 U.S.C. § 1447(c).

**B.      Defendant**

3

Defendant John Hancock argues that this action is one of first impression in this Court: whether the Franklin County Court of Common Pleas has exclusive jurisdiction to decide the enforceability of arbitration agreements contained in reinsurance contracts involving interstate commerce that the Liquidator has affirmed and under which she seeks to recover. John Hancock distinguishes the instant action from other decisions of this Court because there is already binding precedent in the Northern District of Ohio that the claims arising under one of the thirteen contracts at issue here are subject to arbitration. Judge O'Malley dismissed the prior action, brought by the Liquidator's predecessor in interest, and defendant argues that this determination has res judicata effect as to the one treaty and collateral estoppel effect as to the twelve others.

John Hancock argues that this Court's diversity jurisdiction and the FAA are not reverse preempted by the Ohio liquidation statutes under the McCarran-Ferguson Act, and the Liquidator's motion to remand must be denied. The reinsurance contracts contained agreements to arbitrate, and the Liquidator has affirmed these contracts.

John Hancock further argues that the Burford doctrine is not applicable to the instant case. Because this Court's jurisdiction is unimpaired, it has no discretion but to compel arbitration under the FAA.

Finally, defendant argues that the Liquidator's request for attorneys' fees, expenses and costs should be denied because the legal maneuverings of the

4

Liquidator that necessitated the removal petition. Further, the removal petition was not in defiance of clearly applicable precedent as plaintiff argues.

## II.    Discussion

As a preliminary matter, John Hancock's June 2, 2004 motion for leave to file *instanter* sur-reply in response to the Liquidator's reply brief in support of her motion to remand (doc. 16) is GRANTED.

McCarran-Ferguson Act. The Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). In enacting this section, Congress protected "state regulation . . . against *inadvertent* federal intrusion. . . [by] a federal statute that describes an affected activity in broad, general terms, of which the insurance business happens to constitute one part." *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 29 (1996) (emphasis in original).

Chapter 3909 of the Ohio Revised Code is "part of a complex and specialized administrative structure for the regulation of insurance companies from inception to dissolution." *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 494 (1993). It was intended to "protect[] the interests of insureds, claimants,

5

creditors, and the public generally" by vesting the Ohio Superintendent of Insurance with extensive powers to investigate and ensure the financial condition of insurers operating within the state. Ohio Rev. Code § 3903.02(D). The Franklin County Court of Common Pleas has sole jurisdiction over actions brought by the superintendent of insurance under the Liquidation Act. Ohio Rev. Code § 3903.04(E).

Section 2(b) of the McCarran-Ferguson Act established a three part test to determine whether state law preempts federal law: (1) the federal statute at issue must not specifically relate to the business of insurance; (2) the application of the federal law in question must invalidate, impair or supersede the corresponding state law; and, (3) the state law must be enacted for the purpose of regulating the business of insurance. *United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993).

Defendant distinguishes other cases where the courts have found removal to be improper based on the McCarran-Ferguson Act from the instant case because the contracts on which the action is based contain arbitration clauses. However, the presence of the arbitration clauses do not impact whether or not removal was proper at the time the case was removed. John Hancock's reliance on Judge O'Malley's may 30, 2000 Memorandum and Order which held that CGIC's claims are subject to arbitration is misplaced because the issue

6

of whether the arbitration provision can be enforced against the Liquidator

against her wishes was not before the Court.

To some degree, both parties rely on *Benjamin v. Pipoly*, 155 Ohio App.

3d 171 (2003). In *Pipoly*, the court held:

> [W]hen a liquidator is appointed by court order, . . . she is not
> automatically bound by the pre-appointment contractual
> obligations of the insurer. To be so bound, the liquidator must
> affirmatively indicate her election to be responsible for the prior
> obligation of the former operators. Since [the liquidator] was not a
> party to [insurer's] employment agreements or the assignment
> thereof and was not a party to any of the mutual agreements to
> arbitrate, and because there is nothing in the record to
> demonstrate that she adopted any of these agreements and
> expressly assumed the provisions within these agreements may not
> be enforced against her.

*Id.* at 182 (footnote omitted). The court further stated:

> [W]e hold that where, as here, private arbitration impinges upon a
> broad statutory scheme that invests sweeping powers in an state
> official, enforcement of arbitration ipso facto violates public policy.
> Though the Superintendent of the Ohio Department of Insurance
> takes the place of the insolvent insurer for all practical purposes, it is
> clear from the statutory scheme that the General Assembly did not
> contemplate turning over the administration of liquidation
> proceedings and incidental actions to private arbitrators in forums
> shielded from public scrutiny, judicial review of which would be
> sharply limited.

*Id.* at 183. The *Pipoly* decision provides support for both parties' positions

regarding arbitration. However, this Court need not decide whether or not the

Liquidator, as a nonsignatory to the contract, is bound by the arbitration

provisions because she has affirmed the contract.

7

Federal Arbitration Act. Section 3 of Title 9 of the United States Code

provides:

> If any suit or proceeding be brought in any of the courts of the
> United States upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which such suit
> is pending, upon being satisfied that the issue involved in such suit or
> proceeding is referable to arbitration under such an agreement,
> shall on application of one of the parties stay the trial of the action
> until such arbitration has been had in accordance with the terms of
> the agreement, providing the applicant for the stay is not in default
> in proceeding with such arbitration.

9 U.S.C. § 3. The Federal Arbitration Act does not confer subject matter

jurisdiction on a district court. There must be an independent basis for federal

subject matter jurisdiction for a district court to adjudicate a claim under the

Federal Arbitration Act:

> In order to properly invoke either § 3 or 4 of the Act, it is inherent that
> this Court first have the requisite underlying jurisdiction, as well as be
> satisfied that in fact the parties had bound themselves to an
> agreement to arbitrate. The United States Arbitration Act grants both
> state and federal courts concurrent jurisdiction over disputes
> involving arbitration agreements. *Merrill Lynch, Pierce, Fenner, Etc.
> v. Haydu*, 637 F.2d 391 (5th Cir.1981). Specifically, the 5th Circuit
> stated:
>
>> ... [t]he Act alone is insufficient to confer federal jurisdiction:
>> not only must the transactions involved constitute "interstate
>> commerce" within the meaning of 9 U.S.C.A. § 2, but also an
>> independent basis for jurisdiction such as diversity or a federal
>> question must exist before a federal court may properly
>> assume jurisdiction. *See Commercial Metals Co. v. Balfour,
>> Guthrie & Co. Ltd*, 577 F.2d 264, 268-69 (5th Cir.1978)
>> (discussing *Coastal States Gas Producing Co., et al. v.
>> Producing Properties, Inc., et al.*, 203 F.Supp. 956
>> (S.D.Tex.1962)); *Robert Lawrence Co. v. Devonshire Fabrics,
>> Inc.*, 271 F.2d 402, 408 (2d Cir.1959), *cert. dismissed per*

*stipulation,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

*H & M Charters, Inc. v. Reed,* 757 F. Supp. 859, 863 (S.D. Oh. 1991)(quoting *Merrill Lynch, Pierce, Fenner, Etc. v. Haydu,* 637 F.2d 391 (5th Cir. 1981)).

Analysis. Here John Hancock removed this case from the common pleas court alleging diversity jurisdiction. This Court must determine whether or not the action was properly removed before it considers whether or not the FAA is implicated. As discussed above, the fact that the underlying contracts contained arbitration clauses does not provide any independent basis for this Court to exercise subject matter jurisdiction. Whether this Court has subject matter jurisdiction depends solely on whether there was an independent basis to remove the case from the common pleas court. John Hancock argues that diversity provides jurisdiction.

Decisions of the Southern District of Ohio have consistently held that the federal court's diversity jurisdiction is reverse preempted by the Liquidation Act based on the McCarran-Ferguson Act, 15 U.S.C. § 1101 *et seq. See Covington v. Sun Life of Canada Holdings,* No. C-2-00-069, 2000 WL 33964592, at *10 (S.D. Oh. May 17, 2000) (concluding that the federal statutory authority governing the removal of this action effectively invalidates, impairs, or supersedes Ohio Revised Code §§ 3903.04(E) and 3903.28(G) by preventing the consolidation of all liquidation proceedings related to an insolvent insurance company in one forum); *Proliance Insurance Co. v. Allenbrook,* No. C-2-00-319 (S.D. Ohio Aug.

9

22, 2001) (holding that diversity jurisdiction for common law claims was reverse preempted by the McCarran-Ferguson Act); *Covington v. Carvill America, Inc.*, No. C2-01-105 (S.D. Oh. Nov. 5, 2001) (holding that Ohio Revised Code § 3903.04(E) is a law enacted for the purpose of regulating the business of insurance as contemplated by the McCarran-Ferguson Act).

Although these cases have not involved suits against a reinsurer and there was no demand for arbitration, these distinctions do not change the analysis. The General Assembly has regulated reinsurance as part of the overall business of its licensed insureds. Ohio controls what constitutes valid reinsurance, and reinsurers must comply with Ohio's insurance regulations in order to do business with Ohio insurers. *See, e.g.,* Ohio Rev. Code §§ 3901.63, 3901.64, and 3903.32. Reinsurance is part of the business of insurance for the purposes of the McCarran-Ferguson Act. John Hancock's demand that the Liquidator arbitrate her claims is wholly irrelevant to whether this Court has subject matter jurisdiction. For removal to be proper, a federal question must appear on the face of the complaint. A case cannot be removed on the basis of a federal defense. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). John Hancock's argument that the Liquidator seeks to divest this Court of diversity jurisdiction to hear its "strictly procedural" FAA claim wholly misses the mark. That claim could never be a basis for subject matter jurisdiction in this case. In any event, the FAA does not provide an independent basis for federal subject matter jurisdiction. In the

absence of federal subject matter jurisdiction, John Hancock's FAA claim will be decided by the common pleas court. Consequently, plaintiff's motion to remand is GRANTED.

### III.    Costs & Fees

Plaintiff also requests the costs, expenses, and attorney fees she incurred in responding to this improperly removed matter. Pursuant to 28 U.S.C. §1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award of fees and costs is not automatic but may be made where "fair and equitable under all the circumstances." *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993)(quoting *Morgan Guarantee Trust Co. v. Republic of Palau*, 971 F.2d 917, 924 (2d Cir. 1992)). A finding of improper purpose or bad faith is not necessary to support an award under §1447(c). *Id.*

The Sixth Circuit has stated:

The majority of §1447(c) attorney fees cases involve situations in which the district court has awarded such fees. Those cases that involve a district court's denial of fees or that reverse an award of fees are much less numerous. Nonetheless, those cases focus on the objective "propriety" of the removal attempt and set forth the following standard: an award of costs, including attorney fees, is appropriate where the defendant's attempt to remove the action was "fairly supportable," . . . or where there has not been at least some finding of fault with the defendant's decision to remove . . . . By reverse implication, a court abuses its discretion by refusing to award fees where the defendant's argument for removal was devoid of even fair support.

11

*Ahearn v. Charter Township of Bloomfield*, No. 97-1187, 1998 WL 384558, at *2 (6th Cir. June 18, 1998)(citations omitted).

Although the Court does not believe that John Hancock removed this action in bad faith, the Court concludes that plaintiff is entitled to the reasonable costs, expenses, and attorney fees she incurred in preparing the motion to remand and the reply brief. There is substantial case law finding that the federal court's diversity jurisdiction is reverse preempted by the Liquidation Act based on the McCarran-Ferguson Act, and this Court must have jurisdiction prior to enforcing the FAA. Because John Hancock's decision to remove this case was not fairly supportable, the Court concludes that an award of costs and fees is fair and equitable under the circumstances.

### IV.   Conclusion

For the above stated reasons, plaintiff's April 5, 2004 motion for remand (doc. 8) is **GRANTED**; remand to the Franklin County Court of Common Pleas is stayed, however, pending a determination of plaintiff's costs and fees incurred in preparing the motion to remand and the reply brief. Plaintiff is **ORDERED** to submit an itemized statement of such costs and fees and supporting memorandum **within ten (10) days of the date of this Order.** Thereafter, John Hancock may file a brief in opposition within seven (7) days of the date of service of plaintiff's statement and supporting memorandum.

George C. Smith
United States District Judge

13

2. **TRANSMITTAL SHEET FOR APPEAL SUBMITTED TO U.S. DISTRICT COURT**

| | |
|---|---|
| Bankruptcy Case Number: | 00-4070 |
| Adversary Proceeding Number: | 05-50819 |
| Deputy Clerk Transferring Case: | Margaret A. Stansbury (302-252-2900 Ext. 5120) |
| Case Type: | Motion for Leave to Appeal |

**<u>Order, Date Entered and Issues</u>**

Order Denying Motion of Liquidator of Credit General Insurance Company and Credit General Indemnity Company to Reconsider the Court's Memorandum Opinion and Order Denying Motion to Dismiss or Stay, entered on 12/19/05 (D.I. 22) and the associated Opinion of even date (D.I. 21);

**Notice of Appeal is attached.** (Appeal No. AP-05-90)
**Designations not filed.**

| | |
|---|---|
| **<u>Debtor:</u>** | **PRS Insurance Group, Inc., et al.** |
| | |
| **<u>Counsel:</u>** | Maureen D. Luke, Esq. |
| | Edward J. Kosmowski, Esq. |
| | Young Conaway Stargatt & Taylor LLP |
| | The Brandywine Building |
| | 1000 North West Street, 17th Floor |
| | Wilmington, DE 19899 |
| | Telephone: (302) 571-6600 |
| | |
| **<u>Appellant:</u>** | **Ann H. Womer, Superintendent of the Ohio Department of Insurance, in her capacity as Liquidator of Defendants Credit General Insurance Company and Credit General Indemnity Company** |
| | |
| **<u>Counsel:</u>** | Steven K. Kortanek, Esq. |
| | Jennifer L. Scoliard, Esq. |
| | Klehr Harrison Harvey Branzburg & Ellers, LLP |
| | 919 N. Market Street, Suite 1000 |
| | Wilmington, DE 19801 |
| | Telephone: (302) 552-5503 |
| | and |
| | Stephen G. Schweller, Esq. |
| | Susan M. Luken, Esq. |
| | Dinsmore & Shohl LLP |
| | 1900 Chemed Center |
| | 255 East Fifth Street |
| | Cincinnati, OH   45202 |

**Appellee:**                    **Sean C. Logan, in his capacity as Chapter 11 Trustee of**
                                 **PRS Insurance Group, Inc., et al.**

**Counsel:**                     Maureen D. Luke, Esq.
                                 Edward J. Kosmowski, Esq.
                                 Young Conaway Stargatt & Taylor LLP
                                 The Brandywine Building
                                 1000 North West Street, 17th Floor
                                 Wilmington, DE 19899
                                        and
                                 Harold S. Horwich, Esq.
                                 Stephen M. Hryniewicz, Esq.
                                 Bingham McCutchen LLP
                                 One State Street
                                 Hartford, CT 06103